No. 11.—HARRISON B. SARGENT, plaintiff in error, *vs.* ROBERT CALDWELL and others, defendants in error.

[1.] Where S purchases from C & Co. through their agent D, several negro slaves, giving his promissory note in payment, and receiving a bill of sale, but D wrongfully and fraudulently detains the slaves, and never delivers them, and two of the slaves die in his hands ; and afterwards, suit is brought upon this note against S, and he files his bill against these parties, setting forth the above facts—alleging, also, that D, for C & Co. had received hire for said slaves, or was liable for their services to S, after his purchase ; and also, that the slaves living had greatly appreciated in value, and were worth more than he paid for the whole: *Held,* that the remedy of S, at Common Law, was not adequate, and that there was equity in his bill.

In Equity, in Coweta Superior Court. Demurrer. Decided by Judge WARNER, March Term, 1854.

This bill was filed by Sargent, against Robert and John Caldwell, and Winthrop B. Williams, as partners, and Adam B. Dulin.

The bill charges that complainant bargained with Caldwells & Williams for four negroes, to-wit : Brutus and his wife Rechia, and their three children ; that on the 6th February, 1851, he executed to them his note for $1400, for said negroes, and received from them a bill of sale for the same ; that at the time, the negroes were in the possession of Dulin, as their agent ; that the negroes were not delivered to complainant, at the time of the purchase, nor have they ever been, either directly or indirectly, delivered to complainant ; that two of said negroes have since died, whilst in the possession of Dulin, which two, complainant does not know.

The bill further charges, that complainant has frequently made application to Dulin, and through him, to Caldwells & Williams, for the delivery of said negroes, or the delivery of his note, that the same might be cancelled—neither of which has been done. The bill charges that suit has been commenced upon said note; that the defendants have entered into a fraudulent combination and collusion, to defraud complainant out

Sargent *vs.* Caldwell and others.

of the amount of said note. Complainant proposes and offers to bring the amount of money due on said note into Court, to be disposed of as may be decreed by the Court.

The bill further charges, that the two negroes mentioned as now dead, were, before their death, worth $1500, and their hire, up to that time, of the value of $400 ; that the other three negroes are worth $2000, and their hire, of the value of $500; and that complainant has lost the whole of said hire. The bill states that Dulin is insolvent, and that the other defendants reside without the State of Georgia.

The bill prayed that the defendants, Caldwells & Williams, might be decreed to account to and with complainant, for the said hire of the said negroes, to deliver those living, and their increase, to complainant, and account for the value of those dead ; and that defendants be enjoined from proceeding to collect said note out of complainant; to which was added a general prayer for relief.

To this bill a general demurrer was filed, which the Court sustained, and dismissed the bill: to which decision, Counsel for defendants excepted.

BUCHANAN & McKINLEY, for plaintiff in error.

McCUNE, for defendant in error.

*By the Court.*—STARNES J. delivering the opinion.

In this case, the bill was dismissed, on the ground that complainant had an adequate remedy at Common Law ; and this is alleged as error.

Let us see what would have been the remedy at Common Law, and what its efficiency.

*First*, then, we will suppose that the complainant had made payment of the note, and had instituted his action of *trover* for the negroes. Now, according to the allegations of the bill, such of the parties contracting with him, as are solvent and

xvi-9

able to respond in damages, are not residents of this State; and Dulin, the party who resides within the State, is entirely insolvent. Therefore, if judgment be obtained on the note, the complainant may be compelled to pay the same, and yet, lose the negroes or their value.

Let us, in the next place, suppose that complainant had relied upon his defence to the action, commenced against him on the note. Under what pleas could he have found full and ample protection and justice?

A plea of total failure of consideration, could not have been sustained, for the complainant had received title to the slaves, and had the right to possession; and this was certainly a part of that for which he bargained. A plea of partial failure, if admissible, would have been but of limited benefit to him. It may be considered questionable, whether or not such a plea would be available, as the complainant had received title to these slaves. But for my own part, I think that such a plea, under the circumstances, would be proper; still, it would not have afforded the protection and benefit desired by the complainant, and prayed for by his bill.

In that bill, he alleges an increased value of the slaves living, for which, he insists, the defendants are liable; and also a liability for the hire or value of the services of said slaves. Of these, he could gain no benefit by such a plea.

Neither would a plea of set-off have been efficient in his defence. Under that plea, he might have recovered hire, but he could not have had the benefit of any appreciation or increase in the value of the slaves, which he might be equitably entitled to recover.

And by none of these pleas could he have brought the parties suing him, to an account for the damage arising from loss of the deceased slaves, which, he alleges, had been wrongfully and fraudulently detained from him, and for whom these parties should be held liable.

We see not, in short, what other action or defence, at Common Law, the complainant could have rendered available and adequate, taking the case made in his bill as true. But Equity

can afford efficient and suitable relief for such a case ; and in so doing, perhaps, avoid multiplicity of suits and accumulation of costs.

We express no opinion as to the best method of affording relief in this case, by a decree in Equity, supposing the case made in the bill to be sustained by proof. The bill is not so advantageously framed, as to encourage us in giving any opinion on this point. Nor must we be understood to express any opinion, as to the right of the complainant to have relief in the way in which he has *specifically* prayed for it. The regulation and direction of all this, we leave to the intelligent judgment of the Court below, according as the case may hereafter present itself.

Judgment reversed.